### CIMIOTTI UNHAIRING CO. et al. v. NEARSEAL UNHAIRING CO.

(Circuit Court, S. D. New York. July 17, 1901.)

PATENTS—INFRINGEMENT—UNHAIRING MACHINES.

The Sutton patent, No. 383,258, for a machine for removing the hairs from fur skins, claim 8, held infringed on a motion for a preliminary injunction, on the ground that the mechanism of defendant's machine, while operating in a somewhat different manner, was the substantial

equivalent of that described in the claim, performing the same functions in substantially the same manner, and producing no better or different results.

In Equity. Suit for infringement of patent. On motion for preliminary injunction.

Louis C. Raegener and T. B. Reed, for complainants.

Redding, Kiddle & Greeley, for defendant.

THOMAS, District Judge. The bill is filed to enjoin the infringement of claim 8 of letters patent No. 383,258, issued May 22, 1888, to John W. Sutton. The complainants have succeeded to the rights under the patent, and the present motion is for an injunction pending final hearing. Claim 8 is as follows:

"8. The combination of a fixed stretcher bar, means for intermittently feeding the skin over the same, a stationary card above the stretcher bar, a rotary separating brush below the same, and mechanism, substantially as described, whereby the rotary brush is moved upward and forward into a position in front of the stretcher bar, substantially as set forth."

The patent has been considered and sustained by Judge Townsend, in Cimiotti Unhairing Co. v. Bowsky (C. C.) 95 Fed. 474; Same v. American Unhairing Mach. Co. (C. C.) 108 Fed. 82; and by Judge Wheeler, in Same v. Mischke (C. C.) 98 Fed. 297. The defendant denies infringement, and seeks to differentiate its device in several particulars, only two of which require discussion—First, that a stationary card above the stretcher bar is not used, but that on the upper side of the stretcher bar, and very close to the edge thereof, are arranged two rollers, hereinafter described; and, second, that a rotary separating brush is not used below the stretcher bar, but rather a segmental rotary brush, which is not a separating brush, and which is in a fixed location, and has no movement with relation to the fixed stretcher bar other than its rotary movement. The defendant's evidence furnishes the following description of its device and the manner of its operation:

"The pelt, marked 'P' on said drawings, is fastened to an apron, and is intermittently fed by mechanism, not shown, over the edge of a flat stretcher bar, marked 'B,' which has a rounded edge. On the upper side of the stretcher bar, and very close to the edge thereof, are arranged two rollers, marked 'E' and 'E',' the roller being covered with emery cloth, and being fastened so as to bear firmly against the pelt, and thereby produce a tension upon the pelt, and also causes both the hair and the fur to lie down closely thereon, and holds them in that position, so that they cannot escape until the pelt is fed forward. Arranged 9¼ inches from the edge of the stretcher bar is a rotating shaft, marked 'D',' having arms, d, thereon, to which is fastened a carding brush marked 'D².' This carding brush is segmental, and is provided with seven narrow brushes, each comprising four rows of stiff bristles very close together at their outer edges. A pair of plucking jaws, K and K', reciprocating in fixed guides, X, passes the edge of the stretcher bar. The lower jaw is hinged at H to the rear of the upper jaw, and is automatically opened by a cam device, not shown in the drawings, and is closed by the action of a strong spring, S, which causes the lower jaw to swing on its pivot in the arc of a circle of three and a half inch radius, and close against the upper jaw, with great force. The biting edge of the upper jaw is flat, and the biting edge of the lower jaw is beveled, and is narrower than the upper jaw, so that the outer edge of the lower jaw is about one thirty-second of an inch within the outer

edge of the upper jaw. When the jaws are closed, the jaws are reciprocated by a rod, R, actuated by an eccentric, not shown in the drawings, which causes the biting edge of the upper jaw to pass about one-eighth of an inch below the stretcher bar. The guides, X, X, in which the jaws reciprocate, are arranged at an off angle, w, to the stretcher bar, as illustrated by the dotted lines, a, b, so that the jaws not only descend below the stretcher bar but approach a vertical plane, passing through the edge of the stretcher bar as they reach their lowermost and operative position. The operation of this machine is as follows: The pelt having been fixed to the apron which passes over a stretcher bar, the rollers E and E' are put in place, and the pelt is fed forward by the automatic feeding mechanism. The rotation of the carding brush causes the same to engage with the hair and fur, which has been released from the roller, E, by the feeding forward of the pelt, and card or straighten out the hair and fur simultaneously, as clearly shown in defendant's machine Exhibit No. 1. The brush then passes out of contact with the hair and fur, which have been carded, and thereupon permits the hairs to spring out from the fur by reason of the great resiliency of the hair, and by the further reason that the skin is held under tension by the roller, E, it being a well-known fact that the water hairs are much stiffer and more resilient than the fur, and are deeper rooted in the pelt than the fur, so that the hairs tend to spring out more rapidly, more quickly, than the fur. Meanwhile, as the hairs are springing out from the fur by reason of their greater resiliency, the jaws are descending, and, by reason of the angle at which the guides are placed, are approaching closer to the pelt. When the jaws have reached the position shown in defendant's machine Exhibit 3, the lower jaw is automatically released, and because of the curvilinear motion of the lower jaw in closing it gathers up the projecting water hairs and carries them against the upper jaw, which is below the plane of the stretcher bar, and thereby snaps them in two. The jaws are then carried away from and above the stretcher bar, and the pelt is thereupon automatically fed forward one sixty-fourth of an inch by the feeding mechanism, and releases more hair and fur from the rollers, E. and E'. This released hair and fur is thereupon engaged and carded out by the carding brush, D², as heretofore described, and the cutting operation is repeated, and so on until the pelt is unhaired. * * * Exhibit No. 1, defendant's machine, shows the position of the hair and fur at the time the brush is operating thereon with absolute accuracy. No hair or fur whatever at any time stands out until after the last of the small brushes comprising the carding brush has passed out of operative contact with the pelt, and has passed a considerable distance beyond the same. The distance between the rows of bristles in defendant's brush is so slight that its action is, so far as the hair and fur are concerned, precisely as it would be were the brush solid,—that is to say, the bristles continuous. The only object in making this carding brush of independent small brushes with intervals is to enable same to be kept free from the hair and fur more readily than would be possible if the brush were made solid."

It is urged by the defendant that the rollers above the stretcher bar and the brush below the stretcher bar press down the fur and long hairs alike, and that under the complainants' patent the card, E, and the brush, F, compress the fur alone, allowing the long hair to spring up or remain standing, while the card or brush is in contact with the skin, and also that the under brush, F, remains longer in contact with the fur, holding it down during the operation of cutting. The roller otherwise performs the same office as does the card, E, acting not only to maintain the tension of the skin, but also for the purpose of pressing down the fur. Upon the argument the court, in answer to its inquiries, did not discover that any different result was obtained from the failure of the complainants' device to press the long hairs down with the fur, or that the

defendant added anything to the utility of its machine by pressing down the fur and the long hair alike. The use of the roller, therefore, is a simple equivalent for the card used by the complainants, and obviously the segmental brush in this regard performs the same office as does the rotary brush, F, used by the complainants. But it is contended that the complainants' brush remains longer in contact with the fur, holding it down, while the longer hairs have sprung forward and have been removed by the cutting knife. Nothing in claim 8 indicates such action, nor does a reference to the specifications bear out the defendant's contention in this regard. The specifications show that an oscillating guard may be used "that follows the brush and carries the fur still further back and holds it in position." But this guard is no part of claim 8. In any case, even though the defendant's brush comes simply in contact with the edge of the stretcher bar, while the complainants' brush comes not only in contact with the edge, but continues for some distance on the underside, this is but a difference in the degree of action, the defendant's brush performing by its contact, however abbreviated, the same office performed by that of the complainants, namely, for an interval of time sufficient to allow the knife to act separating the fur from the long hairs. The fur in the operation of the defendant's machine may come back to its normal position earlier than in the complainants' device, but a separation of the fur and water hairs is maintained sufficiently long to allow the biting jaws, peculiar to the defendant's device, to cut the long hairs, and this parting of the fur from the long hairs is effected by pressing down the fur. The single duty done by the card and brush in one case, and the roller and brush in the other, is to compress the fur for such space of time that the knife used, whatever its shape, action, or relation to the stretcher bar may be, may eliminate the long hairs, which by their greater resiliency spring back more quickly into place, or, it may be, by greater stiffness remain in place. The length of time that the fur remains compressed is not important, provided there be time sufficient to do the work. The desideratum is to move the fur from the action of the cutting device. This each machine does. The defendant's cutting arrangement may permit the restoration of the fur at the instant of cutting. Nevertheless, the fur is held aside, and away from the biting jaws, so long as is necessary to permit its removal of the long hairs, and this is effected by parts that are practical equivalents of the complainants' machine. The fact that the long hairs are not kept pressed down in the complainants' machine, if such be the case, is not shown to be important. Whether they remain in place awaiting the knife, or spring into place to meet the knife, is nonessential; but that the fur shall be pressed down sufficiently long to allow the knife to meet the long hairs and escape the fur is all essential, and this is effected by the brush. A cutting device like that of the defendant may be so fashioned, nicely adjusted, and operated as to permit the fur to return to its position at such instant of time relative to that when the long hairs come in contact with the cutting apparatus that it may be said that the result of the compres-

sion has passed when the long hairs are removed. Another form of cutting knife may require that the restoration of the fur shall be longer delayed. In each case the fur is pressed down by a method covered by claim 8. Mere peculiarity of mechanism for cutting is not involved in claim 8. Therefore, unless it shall appear that the defendant's machine, by pressing down the long hairs, performs some useful function that is absent in the complainants' device, it is impossible to differentiate the defendant's mechanism from that described in the claim. As has been stated, it does not appear that it is of consequence whether the long hairs are compressed and then escape to meet the knife, or whether they escape altogether the card and brush.

The defendant's machine appears clearly to fall within claim 8, as construed by Judge Townsend, and the motion for the injunction must prevail.